E-FILED
Monday, 27 July, 2026  02:48:04 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

UNITED STATES OF AMERICA,
    Plaintiff,

v.

GEORGE LAVELL GRANDERSON,
    Defendant.

Case No. 4:08-CR-40087-JEH

**Order and Opinion**

Now before the Court is the Defendant, George Lavell Granderson's, motion for early termination of supervised release. (D. 228).[1] For the reasons stated *infra*, the motion is granted.

**I**

**A**

Granderson has been in prison for most of his adult life. His first contact with the criminal justice system was in 1982, when he was charged with theft and disorderly conduct at the age of 18. (D. 80 at ECF p. 10). His crimes have only increased in severity since then. At the age of 20, he had his probation revoked for committing Battery Resulting in Serious Bodily Injury and served five years in prison. *Id.* at ECF p. 5. Between the ages of 25 and 28 he picked up additional charges for battery, public intoxication, and unlawful possession of controlled substances. *Id.* at ECF pp. 11-12. At the age of 29 he was sentenced to six years in prison for Unlawful Possession With the Intent to Deliver. *Id.* at ECF p. 13. However, he was eventually released on parole. *Id.* Just 27 days later he was sent

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

1

back to serve the prior sentence plus an additional three years for illegally possessing a handgun. *Id.* He was then able to briefly stay out of prison before being sent back for four years for committing an aggravated DUI and another drug offense. *Id.* at ECF p. 14. As a result of this record, Granderson was assessed a criminal history category of VI. *Id.* at ECF p. 15.

**B**

The instant offense for which Granderson is currently on supervised release arose from a crack cocaine distribution conspiracy headed by his brother, Soevier Granderson. (D. 230 at ECF p. 1). The Presentence Investigation Report estimated that Granderson had sold approximately an ounce of crack cocaine per month for at least seven years from around August of 1999 through November of 2008, and that he was personally responsible for distributing 2.3 kilograms of crack cocaine during that time. (D. 80 at ECF pp. 5, 9).

On November 19, 2008, a criminal complaint was filed against George Granderson for conspiracy to distribute crack cocaine. (D. 228 at ECF p. 1). On December 16, 2008, a single-count indictment was filed, charging him with the same offense. *Id.* On March 17, 2010, he entered into a written plea agreement, pleading guilty to Count I in the indictment. *Id.* He was then sentenced to 240 months in the Bureau of Prisons and 10 years of supervised release on July 9, 2010. *Id.* On May 27, 2020, pursuant to Section 404(b) of the First Step Act, an amended judgment was entered reducing Granderson's sentence to 156 months' imprisonment and eight years of supervised release. (D. 230 at ECF p. 2). Granderson spent over a decade in the BOP with clear conduct and began his supervised release term when he was released from prison on May 29, 2020. *Id.*

**C**

Early on, Granderson struggled to comply with his supervised release conditions. In September of 2020 he admitted to smoking marijuana and was

2

referred to the Moral Reconation Therapy (MRT) program at Family Counseling and Psychology Center (FCPC) at Rock Island, Illinois. *Id.* In January of 2021, the Court again reprimanded Granderson for using marijuana and required him to participate in the random "code-a-phone" system to provide two drug tests per month, one of which he failed two weeks later. *Id.* at ECF pp. 2-3. The Court then granted a request to add a special condition of supervised release, requiring Granderson to serve 30 days of home confinement, which he completed on April 5, 2021. *Id.* at ECF p. 3. Then, in November of 2021, the Court granted another request to modify the conditions of his supervised release, requiring Granderson to serve one weekend in intermittent confinement because he once again used marijuana. *Id.* A year and a half later, a violation was reported that Granderson had possessed and used marijuana around May 12, 2023. *Id.* No action was recommended and the court concurred. *Id.*

On September 11, 2023, Granderson was charged with Trespass 1st Offense at a Wal-Mart in Davenport, Iowa, along with the misdemeanor of Interference With Official Acts. *Id.* at ECF pp. 3-4. Granderson had been involved in an altercation with a Wal-Mart manager, who called the police to inform them that she wished to have Granderson trespassed from the property. *Id.* Despite requests from the police to provide them with his name, Granderson refused. *Id.* When they told him that they would have to arrest him if he continued to refuse, Granderson held out his hands to be handcuffed and was arrested. *Id.* He then refused to exit the police car upon arrival at Scott County Jail. *Id.* While the trespassing charge was ultimately dismissed, he was ordered to pay a small fine for failing to cooperate with the police. *Id.* at ECF p. 4.

Granderson has improved his behavior since then, committing only one violation in almost three years. *Id.* at ECF pp. 2-4. In March of 2025, a violation report was submitted due to him using marijuana, however, no action was

recommended and the court concurred. *Id.* at ECF p. 4. His last urine sample, which was provided in April of 2026, was negative for any illegal substances. *Id.* at ECF p. 5. Still, the Probation Office has determined that Granderson is a "Moderate/2 risk level" per the Post Conviction Risk Assessment (PCRA) and does not recommend his supervised release be terminated at this time. *Id.* at ECF pp. 4-7.

Granderson has maintained steady employment throughout his term of supervised release, most recently at an Amazon distribution center. (D. 228 at ECF p. 3). He started working there in October of 2025 and continues to work a full-time schedule; 7:30 a.m. – 6:00 p.m. four days a week. *Id.* He spends most of his free time with his girlfriend and eighteen grandchildren, whom he takes pride in being responsible for. *Id.* Granderson is now 62 years old and lives alone in Davenport, Iowa. *Id.* He has had stable housing for over two years, owns his own car, and has a valid driver's license and up-to-date insurance. *Id.*

On April 21, 2026, Granderson filed a *pro se* motion for early termination of supervised release. *Id.* at ECF p. 2. The Court appointed the Federal Public Defender, who filed an amended motion for early termination on May 5, 2026. (D. 230 at ECF p. 4).

## II

While acknowledging that Granderson currently seems to be doing "reasonably well," the government opposes Granderson's motion for early termination, concluding that "the public would benefit from his continued supervision at this time." (*Id.* at ECF p. 7-8). In support of its assertion, the government cites to Granderson's substance abuse problems, the incident at Wal-Mart, the repeated violations of his supervised release conditions, his PCRA score of two, and his lengthy criminal history. (*Id.* at ECF pp. 6-7).

4

Granderson acknowledges that there have been some "bumps in the road," but contends that he has successfully transitioned back into community life and that supervision is no longer necessary, as there is little doubt that he presents no danger to the public. (D. 228 at ECF pp. 4-5). Granderson supports his claim by pointing out that the violations of his supervised release conditions are relatively minor in comparison with his original offense and that he has not engaged in any serious criminal conduct since he was indicted in 2008. (*Id.* at ECF pp. 2, 4). He also asserts that he has taken full responsibility for his actions and that supervision is no longer needed for his success as the benefits of living a simple and stable life outweigh the desire to engage in the type of behavior that caused him so much trouble as a younger man. (D. 225 at ECF p. 1); (D. 230 at ECF p. 4).

### III

Title 18 of the United States Code, section 3583(e) governs a Court's early termination of supervised release. Under subsection (1), a court may terminate a term of supervised release after one year if the court is satisfied that such action is warranted by the defendant's conduct and in the interest of justice. 18 U.S.C. § 3583(e)(1). In making this determination, a court must consider the factors set forth in 18 U.S.C. 3553(a). [2]

Among the relevant considerations are: 1) the nature and circumstances of the offense and the history and characteristics of the defendant; 2) deterrence of future criminal conduct; 3) protecting the public from future criminal conduct; 4) providing the defendant with adequate resources for rehabilitation; 5) any pertinent policy statements; 6) the advisory sentencing framework; 7) the need to avoid unwarranted sentencing disparities among defendants in similar

---

[2] Sub-sections 3553(a)(2)(A) and (3) are excluded from the factors a court must consider as set forth in § 3583(e), and subsections (a)(4) and (a)(5) only have applicability to imposition and revocation of a supervised release term, not an early termination. Subsection (a)(7) relates to restitution, which is inapplicable in this case.

circumstances; and 8) any outstanding restitution obligations. 18 U.S.C. 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), (a)(7).

The decision to terminate a defendant's supervised release term rests within the court's sound discretion. *United States v. Nonahal*, 338 F.3d 668, 671 (7th Cir. 2003). Compliance with the conditions of supervision does not automatically entitle a defendant to early termination, but neither must a defendant demonstrate perfect conduct while on supervision before relief can be granted. *United States v. Crisp*, 770 F. Supp. 3d 1124, 1139 (C.D. Ill. 2025). Rather, the court must evaluate the record as a whole and determine whether supervision remains necessary to achieve the purposes identified in § 3553(a).

## IV

### A

Granderson is well-past the statutory requirement of serving at least one year of supervised release; he has served six years of his eight-year term. Therefore, the Court must determine whether his conduct and the interests of justice weigh in favor of early termination. The nature and circumstances of the offense are serious—Granderson was convicted of conspiring to distribute crack cocaine. That offense, paired with Granderson's lengthy criminal history demonstrates a troubling pattern of behavior that the Court does not take lightly. However, the question before the Court is not whether Granderson committed serious offenses in the past; rather, it is whether his conduct on his present term of supervision and the interests of justice now warrant early termination.

The Government highlights Granderson's extensive and violent criminal history. However, while the nature and circumstances of a defendant's offense and history may inform a court's early termination decision, they should be considered through the lens of deterrence and rehabilitation, not as a freestanding judgment about the seriousness of his past conduct. The Supreme Court's decision in *Esteras*

*v. United States* confirms that approach. 606 U.S. 185 (2025). In *Esteras*, the Supreme Court held that § 3553(a)(2)(A) cannot be considered when deciding whether supervised release should be revoked under 3583(e). *Id.* at 204. The Court also addressed the distinction between prohibiting consideration of § 3553(a)(2)(A) and permitting consideration of the nature and circumstances of the offense under § 3553(a)(1). *Id.* at 200. A court may consider the nature and circumstances of the offense, but only in light of the permissible considerations set forth in § 3553(a)(2)(B), (C), and (D)—namely deterrence, public safety, and rehabilitation.

This Court applied that same reasoning in *United States v. Katus*. No. 1:08-CR-10024-JEH-1, 2025 WL 1827893 (C.D. Ill. July 2, 2025). There, the Court recognized that although the nature and circumstances of Katus' offenses were troubling, they would remain troubling no matter how much time had passed. *Id.* at 3. If the nature and circumstances of the underlying offense alone could never be overcome by evidence of rehabilitation, then continued supervision would eventually serve only to punish the defendant for the seriousness of past conduct. *Id.*

The record reflects a meaningful difference between the types of offenses for which Granderson was originally convicted and the conduct underlying his violations on his current term of supervision. Over roughly six years, Granderson used marijuana on six occasions—five times between September of 2020 and May 2023, and only once between 2023 and 2026. Although violations of one's supervised release conditions are not to be taken lightly, recreational marijuana use differs substantially in both nature and severity from crack cocaine distribution, and none of the violation reports submitted by the government allege any intent to distribute marijuana or any other controlled substance. Furthermore, marijuana use is a legal activity in the state of Illinois. Granderson's conduct, therefore, bears little resemblance to the behavior for which he was convicted over

7

16 years ago. While his marijuana use constituted a technical violation of the conditions of his supervised release, such use did not become more dangerous or harmful to the public merely because those conditions prohibited it.

**B**

Despite acknowledging that the charge was not particularly serious, the Government also cites the Wal-Mart incident as a reason to deny Granderson's motion. It argues that an escalation of a trespass into an arrest shows a concerning decision-making process that, when combined with Granderson's original offense and criminal history, could pose a threat to the public. While the incident does raise some concern, few conclusions can be drawn from it that would suggest Granderson is a danger to the public. First, the record is silent about who initiated the altercation, and it could have just as easily been the manager behaving unreasonably. Second, when Granderson was told he would be arrested if he did not identify himself, he voluntarily held out his hands to be handcuffed. Third, the trespassing charge was ultimately dismissed and the only action Granderson was held accountable for was not identifying himself and refusing to get out of the squad car—a decision that indicates frustration rather than aggression or dangerousness. Granderson's behavior here is a marked improvement when measured against his lengthy and violent criminal history.

**C**

Regarding the need for deterrence, Granderson has demonstrated that specific deterrence has already taken effect. As in *Crisp*, the benefits of stable employment, a stable home, and consistent family support are doing the deterrence here. Granderson has asserted that at 62-years-old, he now likes to keep things simple and follow the rules as it makes his life easier. His income from a full-time job, relationship with his girlfriend and grandchildren, and the benefits of living a law-abiding life seem to be a far greater deterrent to criminal behavior

than are his current supervised release conditions. Unlike the defendant in *Crisp*, however, Granderson's term on supervision has not been perfect. His trajectory, however, has been promising and perfect conduct is not required for early termination of supervised release. *See United States v. Crisp* (rejecting a "perfect conduct plus" standard that required a defendant to show more than mere compliance with conditions of supervised release). Granderson's violations were concentrated in the first three years of an eight-year term, largely involved a substance now legal in the state of Illinois, and have narrowed to a single minor incident in the past three years.

The court must also consider that the primary goal of supervised release is to ease a defendant's transition into the community after a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who needs supervision or training programs after release. The record reflects that Granderson has made use of the rehabilitative services available to him. Early on he completed an outpatient marijuana treatment program at FCPC, addressing the negative patterns and habits underlying his use.  He then served his 30 days of home confinement and regularly participated in the code-a-phone testing program throughout his term. Despite his early struggles, Granderson's most recent marijuana violation resulted in no recommended action from the Probation Office, and he does not appear to be relying on any further rehabilitative services at this time.

The Court recognizes that the Probation Office currently classifies Granderson as a "moderate/2" risk under the PCRA and does not recommend his termination at this time. While that classification deserves consideration, it does not outweigh the other § 3553(a) considerations favoring termination.

The Government urges the Court to consider Granderson's recent behavior as it relates to his past criminal history. In doing so, it becomes clear that

Granderson has taken significant steps toward his rehabilitation and transition to community life.  While it is concerning that he would allow a minor altercation to escalate to the point of arrest, the nature of that arrest does not indicate that Granderson posed a threat to himself, the officers, or the public. Granderson has been in and out of prison since he was 18 years old. He was an aggressive, violent criminal and an active participant in a prolonged crack cocaine distribution conspiracy, but neither during the past 10 years he was incarcerated, nor at any point during his supervised release term has he displayed the type of behavior that characterizes his past.  Granderson has served six years of his term with only minor infractions. He has demonstrated a willingness to work a regular job and support himself and his family in a legal and responsible way. He is ready to rejoin society without supervision.

V

For these reasons, George Lavel Granderson's motion for early termination of supervised release is GRANTED.

*It is so ordered.*

Entered on July 27, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE

10